On August 19th, 1927, defendant (at that time named Judea Life Insurance Co.) issued to Benjamin Ginsberg its Policy No. 1612 insuring his life in the sum of $10,000 in favor of his wife, the present complainant.
Premiums on this policy were paid quarterly until November 19th, 1932. Because of default in this payment, continuing for thirty days, the coverage or protection of this policy lapsed, except that under the terms of the policy, insurance for the face amount, less any indebtedness, continued automatically for a certain term to be ascertained by computation in accordance with specific provisions of the policy.
On March 1st, 1933, the defendant having made a computation as to the term of such extended insurance, sent a written notice to the insured that this policy had lapsed and that in accordance with its terms extended insurance in the amount of $9,548 would be in effect for two years and 258 days from November 19th, 1932, expiring on August 4th, 1935.
On June 17th, 1933, the insured committed suicide.
Defendant declined to pay the complainant beneficiary and is contesting the suit at law brought by complainant. In that suit the defendant has set up defenses based on the allegation that its actuarial department had made an error in calculating the term for which the insured was entitled to extended insurance under the policy; that in fact such term was only for 96 days (instead of two years and 258 days) and expired February 16th, 1933; that the notice which defendant sent out March 1st had been based on this error in calculation, and that defendant under the terms of the policy is not liable to complainant. *Page 225 
The truth of this allegation or defense is not denied by complainant — indeed it is proven or admitted in the present suit; but it is the contention of complainant that an equitable estoppel exists against the setting up of such defense by defendant, and the present bill is filed for a decree restraining defendant from setting up or relying upon such defense to the suit at law.
Proofs in this case satisfactorily establish that the insured believed and relied on the truth of the statement made by defendant in its notice to him aforesaid. Defendant's evidence shows that it discovered the mistake about March 22d 1933, but there is no evidence that knowledge or notice of this mistake was ever communicated by defendant to the insured. There is evidence that a corrected notice was prepared by defendant, but there is no evidence that it was actually mailed or otherwise transmitted to him. It also satisfactorily appears that the insured was justified in believing and in relying upon the notice he had received from defendant. The factors involved in the calculation of the term of extended insurance, under the provisions of the policy are such as to make that calculation difficult if not impossible for the ordinary person; and the evidence fails to show that the insured knew or ought to have known that an error had been committed by defendant.
There remains the question as to whether this erroneous notification from the defendant to the insured caused him any injury, — whether his reliance upon the truth of the representation resulted to his injury or damage, or to the injury or damage of the complainant.
What did the insured do, or what did he refrain from doing, as the result of the reliance on the erroneous notice, which caused such injury or damage?
The only positive act on his part, which might be put forward in this behalf, was his commission of suicide; but certainly it cannot be contended that he had any right to commit suicide in reliance upon this erroneous notice. He had no right to commit suicide at all; that act was an illegal act.
It is contended by complainant that the insured, relying *Page 226 
upon the correctness of the erroneous notice, refrained from doing an act, — namely that he refrained from having the policy of insurance reinstated.
It is true of course that the insured did not have the policy of insurance reinstated between February 16th, 1933, and June 17th, 1933, and that he made no effort or application for such reinstatement during that period. But is it shown that if had not been for his receipt of and reliance upon the erroneous notice, he would have applied for and would have obtained the reinstatement of the policy? It is necessary, of course, for the complainant to establish this; it is necessary for her to show that the absence of reinstatement of the policy was caused by the reliance upon the erroneous notice, — otherwise no estoppel arises. Moreover the burden of proof is upon complainant on this point.
The proofs show that the insured during the entire period from December 1932 to June 17th, 1933, was in debt and insolvent; in September 1932 he had borrowed up to the last dollar on the policy in question. It is true that there was testimony by two or three of the insured's friends that they had loaned him money and that they would have been entirely willing to have loaned him further moneys if he had requested it, notwithstanding the non-payment of their outstanding loans. But this does not prove that the insured would have borrowed moneys from these friends for the purpose of reinstating the policy, if he had known that the policy had absolutely expired. It might well be presumed that he would have borrowed the moneys for the reinstatement of the policy, if he had intended to commit suicide within a comparatively short time; but it is by no means a fair presumption that he would have borrowed moneys for the reinstatement of the policy if he had not intended so to commit suicide, — because he would have realized that the reinstatement of the policy would require the payment not of the single premium, but the payment of premiums for an indefinite length of time.
It need scarcely be said that if he had borrowed the money to obtain the reinstatement of his policy, with the intent of committing suicide in a short time, his act in procuring the *Page 227 
reinstatement of the policy with that intent would of course have constituted a fraud upon the insurance company; hence this cannot be relied upon as ground for creating an estoppel.
Moreover it is not established in the opinion of this court that if the insured had made application for the reinstatement of the policy and had borrowed the necessary funds to pay the premiums, that he would have been able to obtain the reinstatement of the policy from the insurance company. The evidence shows, — and indeed it is common knowledge, — that the insurance company would not have reinstated this policy if they had known of the insured's insolvent financial condition, the melancholy and depressed state of mind he had been in for a number of months and the fact that he had made an attempt to commit suicide in December, 1932. It is argued by complainant that knowledge on these points would not have come to the insurance company through any statements required by the company to be made by the applicant on his application for reinstatement. But it further appears from the evidence, — and is also a matter of common knowledge, — that insurance companies obtain reports and information as to matters having to do with the desirability of a risk, from sources wholly outside of the applicant. It cannot be presumed from the evidence in this case that the insurance company would not have known of these facts and circumstances which would have made the applicant an undesirable risk; rather does it seem that the presumption would have been the other way.
Finally it is difficult to escape the conclusion that if the insured had applied for reinstatement of his policy, he would have done so with the intention of committing suicide within a short time after the reinstatement. He was in this insolvent financial condition. He had attempted to commit suicide in December, 1932; the letter which he left behind in his own handwriting shows that he had no hope of bettering his condition, and that he had all along carried in his mind the idea and intent of suicide; and that this idea continued and was carried into effect in June, 1933. As has been already said, if he had applied for and obtained a reinstatement of his policy, having at the time the intent to commit *Page 228 
suicide, that would have been a fraud upon the insurance company. It would have been a fraudulent concealment if he had not disclosed that intent; and if he had disclosed the intent he would not have obtained the reinstatement of the policy.
It is concluded that the complainant is not entitled to the relief sought, and that the bill must be dismissed.
One thing more may be added, and that is that it would seem that there might well be room for doubt as to the right of the complainant, — the beneficiary under the policy, — to a decree establishing an estoppel in her favor, even if the facts were such as to lead the court to conclude that the insured was entitled to an estoppel as against the insurance company. The insurance company made no representation to the beneficiary; she did nothing, nor refrained from doing anything; and apparently was a pure donee of the benefit of the insurance contract, without any consideration moving from her. The point was not mentioned by either side; and in view of the result reached upon the other considerations, it is unnecessary to go further into it.