ALEN KALLMAN and Others, by MILDRED KALLMAN, Their Guardian ad Litem, and MILDRED KALLMAN, Respondents, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

First Department, June 23, 1936.

*Peter C. Mann* of counsel [*Alexander & Green*, attorneys], for the appellant.

*William Seligson* of counsel [*Leo E. Falkin* with him on the brief], for the respondents.

COHN, J. The defendant issued its policy of life insurance in the sum of $51,000, covering the life of Joseph Kallman, on April 4, 1927. Slight changes were subsequently made in the form thereof but substantially it continued as originally issued. In accordance with the provisions of subdivision 10 of section 101 of the Insurance Law, the policy contained the following provision: " Reinstatement. If this policy shall lapse in consequence of the non-payment of any premium when due, it may be reinstated at any time upon the production of evidence of insurability satisfactory to the Society, and the payment of all overdue premiums, with interest at 5% per annum, and upon the payment with interest or the reinstatement of any indebtedness to the Society secured by this policy."

In the summer of 1934 the policy was permitted to lapse. The monthly premium of $104.55 due July 4, 1934, was not paid when due nor within the days of grace thereafter. On August 6, 1934, two days after the period of grace had expired, defendant received from the insured a check in the amount of $104.55. This check was deposited for collection on August 7, 1934, and was returned unpaid on August 9, 1934, marked " insufficient funds." On August 9, 1934, the check was rebanked and was again returned marked " insufficient funds." On August ninth the insured was notified that the check had been returned and was again being rebanked. On August thirteenth he was advised that it had been again returned by the bank unpaid.

Application was made for reinstatement on August 24, 1934. At that time the policy was subject to a lien by defendant for a loan made to the owner of the policy upon the sole security thereof in the sum of $3,555.47. The cash value of the policy with premiums paid to July 4, 1934, was $3,557.25, leaving an equity over and above the loan or advance of $1.78.

Although conceding that at the time of the application for reinstatement the insured was a satisfactory risk from a medical standpoint, on September 14, 1934, the defendant declined to reinstate the policy. This refusal was the result of an investigation which disclosed that the insured was not engaged in business as represented by him and had not been so engaged for more than three years, that he was carrying additional life insurance in excess of $159,000, a sum entirely out of proportion to his income and financial standing, that he had admitted that his income did not warrant his continuing so much insurance, that he had borrowed practically to the limit of the loan value of his insurance, and that a remark made by him during an interview in connection with his application for reinstatement warranted the inference that the idea of suicide was not absent from his mind. The insured did commit suicide on January 8, 1935. This action on the policy was commenced by the beneficiaries on July 22, 1935.

On a motion for summary judgment the plaintiffs have been awarded the face amount of the policy and defendant appeals. The question presented is, does the language of the statute and of the policy, "evidence of insurability satisfactory to the Company," limit the inquiry on an application for reinstatement to the good health or good physical condition of the insured?

Prior to 1906 in policy provisions covering reinstatement the expression commonly used was "good health." Following the so-called Armstrong investigation the Legislature endeavored to improve and standardize insurance practice. In the provision covering reinstatement of policies the Legislature made use of the words "evidence of insurability satisfactory to the company." It may not be said that this change was without significance. Had the Legislature intended that the company should be satisfied with evidence of good health, it would have authorized continuance of the theretofore common expression "good health."

The distinction between "good health" and "insurability" might be illustrated in the case of a criminal condemned to death. On the eve of his execution he might be found to be in perfect physical condition, but it could not be reasonably contended that his situation did not affect his insurability. There are numerous circumstances which affect insurability. In *Ginsberg* v. *Eastern*

*Life Ins. Co.* (118 N. J. Eq. 223; 178 A. 378; affd., 120 N. J. Eq. 110; 184 A. 348) the court said that it is common knowledge that an insurance company will not reinstate a policy where it is known that the insured is financially insolvent and the circumstances show probability of suicide.

The Court of Civil Appeals of Texas, in *Missouri State Life Insurance Co.* v. *Hearne* (226 S. W. 789), has said that "insurability" does not mean "desirability," and when an applicant for reinstatement shows himself to be in perfect health the company is bound to reinstate. There reinstatement had not been refused, and definition of "insurability" was not essential to the determination of the question before the court, which was the right of the company to impose a new condition in the policy as reinstated. However, our interpretation of "insurability" is not in accord with that of the Texas court.

We are of the opinion that the language of the statute and of the policy, "evidence of insurability satisfactory to the company," does not limit the inquiry upon an application for reinstatement to the good health or good physical condition of the insured. Under the provisions of the Insurance Law, the Legislature has delegated to the company the right to say whether or not the evidence of insurability is satisfactory. This does not mean, however, that the company may arbitrarily determine that such evidence is not satisfactory. "The agreement did not contemplate the exercise of the insurer's taste or fancy or caprice." (*Thompson* v. *Postal Life Insurance Co.*, 226 N. Y. 363, 367.) There must be some sound and valid reason for finding the applicant no longer insurable. Here, the insured's pecuniary circumstances coupled with his heavy overinsurance, entirely out of line with his income and financial condition, had a definite bearing upon his longevity and created a moral hazard which directly affected his insurability. (*Valton* v. *National Loan Fund Assurance Society*, 1 Keyes, 21.) In the circumstances plaintiffs' motion for summary judgment should not have been granted.

The judgment and order appealed from should be reversed, with costs, and the motion for summary judgment denied, with ten dollars costs.

MARTIN, P. J., McAVOY, UNTERMYER and DORE, JJ., concur.

Judgment and order unanimously reversed, with costs, and the motion denied, with ten dollars costs.