VIOLET G. KIRBY, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.—191 S. W. (2d) 379.

Kansas City Court of Appeals. November 5, 1945.

*Herbert Jacob, Phineas Rosenberg* and *Henderson, Henderson &
Swofford* for appellant.

478

*Henry I. Eager, Michaels, Blackmar, Newkirk, Eager & Swanson,* for respondent.

480

SPERRY, C.—Violet G. Kirby, plaintiff, sued the Prudential Insurance Company of America, defendant, on a policy of life insurance issued by it to plaintiff's deceased husband, Charles E. Kirby. From an adverse judgment plaintiff prosecutes this appeal.

The policy provided a death benefit of $5000 and a like sum in addition, if death resulted from accident. Defendant concedes that the death benefit provision was in force as extended insurance and has paid same in full. This suit is for recovery on the double indemnity feature.

The policy was dated Janury 5, 1932, and is, a Missouri contract. It contained provisions as follows:

"Reinstatement—If this policy be lapsed for non-payment of premium, it wll be reinstated at any time after the date of lapse upon written application and payment of arrears of premiums, . . . and provided evidence of insurability of the insured satisfactory to the company can be furnished.

\*_____

"Payment of Premiums— . . . The payment of any premium shall not maintain the policy in force upon the date when the next payment becomes due, except as to the benefits provided for herein, after default in premium payment.

"Entire Contract Contained in this Policy—This policy together with the Application . . contains and constitutes the entire contract between the parties hereto. . . .

"Modifications, etc.— . . . No modification or change shall be made in the Policy except such as is in accordance with the laws of the state in which the same is issued. . . ."

The premium falling due on April 5, 1940, was not paid on the due date or within the grace period. On May 16, 1940, insured applied for reinstatement of the policy and tendered the full amount of the delinquent premium, which was accepted conditionally and later tendered back to insured. No question is involved concerning tender of the premium by insured, or waiver by defendant because of its conditional acceptance.

Shortly after insured filed application for reinstatement defendant presented to him an aviation questionnaire, requesting that he fill it out and return it, which he did. Insured stated therein that he owned an airplane which he operated for pleasure; that he had taken 60 "take-offs" in 1937, 40 in 1938, 60 in 1939 and 60 in 1940; that during those years he had flown a total of 130 hours; and that he expected to make other flights for pleasure. Thereupon, defendant requested that insured execute an instrument, designatd as "Limitation of Liability in event of death as a result of riding in aircraft," same to become a part of the policy if and when it should be reinstated. The effect of the proposed limitation would have been to exempt defendant from liability under the policy in case insured should be killed or injured while riding in aircraft, excepting under stated conditions. Insured refused to execute said instrument or to agree to said limitation. Thus the matter stood on February 1, 1943, when insured was accidentally killed while riding on a motorcycle.

It is conceded by defendant that insured was in good health on May 16, 1940, and at the time of his death. No question is raised concerning his insurability except that he owned and flew an aircraft and expected to continue to do so. Defendant contends that thereby deceased was not insurable, within the meaning of the reinstatement clause of the policy, on May 16, 1940; that it was legally justified in declining to reinstate the policy; and that plaintiff cannot recover on the double indemnity feature of the policy (for accidental death) because the policy had lapsed and was not in force at the time of death, except as extended insurance. If defendant's contention in this regard is upheld the judgment should be affirmed.

Plaintiff contends that "evidence of insurability," as stated in the reinstatement clause of the policy, means evidence of good health and of his insurable interest. The issue thus tendered is: Did insured furnish evidence of insurability when he furnished proof of his good health? If so, then the judgment should not be permitted to stand.

Plaintiff cites Chambers v. Metropolitan Life Insurance Company, 138 S. W. (2d) 29, l. c. 37, where we said: "It has been held that the word 'insurability' when used in life insurance policies is no more comprehensive than that of 'good health' and an insurable interest." [Missouri State Life Insurance Company v. Hearne, Tex. Civ. App. 226 S. W. 789.]

We were there considering a Kansas contract of insurance which was governed by the Kansas statutes and by the decisions of the courts of Kansas. The statutes of Kansas required the reinstatement of a lapsed life insurance policy upon the "production of evidence of insurability" of insured, and the reinstatement clause of the policy in suit was in harmony with the state. The question was whether or not the reinstatement had been secured by fraud, it being charged that insured had concealed from the company material facts concerning the condition of his health and of medical treatment received by him. The question of insurability, as such, was not considered. If the quoted statement was necessary to a disposition of the case, it was not made as a declaration of law but was merely an observation to the effect that such had been held to be the law in one decision by one of the appellate courts of Texas. We do not consider it as a precedent in the case now under consideration. Therefor, we undertake a disposition of this case, on the issue presented, without benefit of enlightment to be obtained from opinions by courts of this state on the direct question, and free from restrictions imposed by precedent which we might be bound to follow.

Reinstatement of a lapsed insurance policy constitutes a new contract. [Chambers v. Metropolitan Life Insurance Company, supra; State ex rel. Metropolitan Life Insurance Company v. Shain, 334 Mo., 385, l. c. 392.] When a policy lapses for non-payment of premiums the only thing that is left alive is the contract for reinstatement.

But where, as here, the policy provides for reinstatement upon written application, payment of premiums in arrears, and production of evidence of insurability, insured has a contract right to have his policy reinstated if he meets said conditions, and the company may not arbitrarily reject said application. 6 Couch On Insurance, pages 4939, 4940; Chambers v. Metropolitan Life Insurance Company, *supra.*

Plaintiff relies heavily on Missouri State Life Insurance Company v. Hearne, 226 S. W. 789, l. c. 795, where the Galveston Court of Civil Appeals of Texas held that the term "insurability," when used in a life insurance contract, was no more comprehensive than good health and an insurable interest. The court declared that such was its popular, generally understood, and plain meaning. The decision was rendered in 1920, and but one authority is cited in support of the conclusion reached, to-wit: Sussex v. Aetna Life Insurance Compay, 33 Dominion Law Reports 549, 38 Ontario Law Reports 365.

In the Sussex case, *supra*, the policy had lapsed for non-payment of premiums and it was provided that it might be reinstated upon payment of delinquent premiums and production of evidence of insurability. When the policy was issued insured was a commercial traveler but when he sought reinstatement he was a member of the armed forces and subject to service in World War 1.

The policy contained the following provision:

"This policy contains no restrictions regarding change of occupation, residence, travel, or service in the militia or army or navy in time of war or in time of peace";

Insured declined reinstatment except upon inclusion of certain conditions regarding military service. The trial court said: "Proof of insurability, in condition 14, means that the insured, at the time of application for reinstatement, is a proper risk for insurance *upon the basis of the original contract*, and the condition of the health of the insured is the only matter to which I can think it could apply *in this case*; and, at all events it is the only matter to which it did in fact apply, *upon the circumstances here*." (Italics ours.)

On appeal the judgment of the trial judge, in favor of reinstatement, was affirmed and the court said: l. c. 556.

" . . . but it seems to us that the clause is suceptible only of the interpretation which the trial Judge has put upon it, and that all that was required to entitle the respondent to have his policy reinstated was to pay or tender the overdue premium with interest and furnish proof that he had an insurable interest in his life and was in good health; and that he has done."

We think the learned author of the opinion in Missouri State Life Insurance Company v. Hearne, *supra*, misconstrued the opinion in Sussex v. Aetna Life Insurance Company, *supra*, else he would not have cited it as authority for the legal proposition he there declares.

In Illinois Bankers Life Assurance Company v. Payne, 93 S. W. (2d) 576, 1. c. 579, decided in 1936 by the Dallas Court of Civil Appeals of Texas, it was held that insurability means good health. The author of that opinion cites, as sole authority, the Hearne case, *supra.*

In Chambers v. Metropolitan Life Insurance Company, *supra,* the observation there made was apparently based solely on the Hearne case.

We have examined Smith v. Bankers National Life Insurance Company, (Neb.) 265 N. W. 546, and while it appears to have been there held that evidence of good health constitutes evidence of insurability, we are not able to understand clearly all of the issues that may have been involved, or the policy terms that were applicable. It is not persuasive.

The above are all of the decisions that have come to our attention that may be said to support plaintiff's position, in respect to the meaning of the term "insurability." With the exception of the Nebraska decision, they trace back to the Sussex case, which was misinterpreted in the Hearne case, and which does not support plaintiff.

In Kellman v. Equitable Life Assurance Society, 288 N. Y. S. 1032, 1. c. 1034, (affirmed 272 N. Y. 648, 5 N. E. (2d) 375) the policy provision respecting reinstatement followed the language of the New York statute, to-wit: "Evidence of insurability satisfactory to the Society." The Society conceded that insured was in good health but declined reinstatement because its investigation disclosed that he had other insurance in the amount of $159,000, was not in business, had borrowed practically to the limit on all of his policies, and had made a remark indicating that suicide was not absent from his mind. The court said, 1. c. 1034:

"Prior to 1906 in policy provisions covering reinstatement the expression commonly used was 'good health.' Following the so-called Armstrong investigation, the Legislature endeavored to improve and standardize insurance practice. In the provision covering reinstatement of policies the Legislature made use of the words 'evidence of insurability satisfactory to the Company.' It may not be said that this change was without significance. Had the Legislature intended that the company should be satisfied with evidence of good health, it would have authorized continuance of the theretofore common expression 'good health.'

"The distinction between 'good health' and 'insurability' might be illustrated in the case of a criminal condemned to death. On the eve of his execution he might be found to be in perfect physical condition, but it could not be reasonably contended that his situation did not affect his insurability. There are numerous circumstances which affect insurability. In Ginsberg v. Eastern Life Insurance Company of New York, 118 N. J. Eq. 223, 178 A. 378, affirmed 120

N. J. Eq. 110, 184 A. 348, the court said that it is common knowledge that an insurance company will not reinstate a policy where it is known that the insured is financially insolvent and the circumstances show probability of suicide.''

The court discussed and disagreed with the holding in the Hearne case.

In Kahn v. Continental Casualty Company, 325 Ill. App. 1, 59 N. E. (2d) 524, (1945) the company declined reinstatement of a non-cancellable health and accident policy, except for a reduced amount. The policy contained a provision for reinstatement upon production of ''evidence of insurability satisfactory to the Company.'' There was no contention that insured's health was not good but rejection was based on the fact that he then had other accident and health policies which, with the one in suit, provided indemnities in excess of his demonstrated total annual earnings. The court held that ''evidence of insurability does not limit the company to an injury into matters of health alone,'' and said, l. c. 534:

''Plaintiff's policy did not contain a provision which required, as a matter of contract, that he should always remain in good health; but no one would argue that the absence of such a clause would preclude defendant, in passing on an application for reinstatement, from considering the then state of plaintiff's health. There is no clause in the policy which, as a matter of contract, prohibited plaintiff from indulging in such eating habits as might lead to a bad state of health, or a deterioration of his physical condition; but after the policy lapsed, the company in passing on an application for reinstatement, would have a right to reject the application on the ground (if the facts warranted) that the subject was then in a bad state of health. Thus, the absence of a clause in the policy would not control the decision, because the question was and is one of insurability of the applicant at the time of and within the meaning of that word as used in the reinstatement clause. After the lapse such clause became and was the only part of the contract then subsisting between the parties. Health is a question of physical hazard. Other factors, including over-insurance, are questions of so-called 'moral hazards' involved in the risk. In the insurance business all are insurance hazards, differing between themselves only in their nature. All are hazards contemplated by the word 'insurability.' ''

In the following cases it has also been held that ''insurability'' is broader in meaning than ''good health''; Equitable Life Assurance Society v. Pettid, (Ariz.) 11 Pac. (2d) 833, l. c. 839; Greenberg v. Continental Casualty Company, (Cal.) 75 Pac. (2d) 644, l. c. 649; Gressler v. New York Life Insurance Company, (Utah) 156 Pac. (2d) 212, l. c. 214; Bankers Life Company v. Bowie, 121 Fed. (Colo.) 779, l. c. 781. From certain language used in Ginsberg v. Eastern Life Insurance Company, (N. J. Chancery) 178 Atl. 378, l. c. 380,

that decision is also in point and in harmony with those above cited.

While there is authority to support both sides of the controversy, the weight thereof is to the effect that the term "insurabiliy" is broader than "good health and an insurable interest"; and the courts approach agreement on the broader meaning of the term where the materiality of a misrepresentation in a life insurance policy, or in a reinstatement provision, is involved and where fraud is offered as a defense.

In State Mutual Life Insurance Company v. Rosenberry, 213 S. W. 242, the Commission of Appeals of Texas reviewed a decision of the court of Civil Appeals of that state, 175 S. W. 757. Insured had stated in his application for reinstatement of a lapsed policy that he had not, been since the policy issued, examined for and refused any other insurance policy. This statement was false. It was held that the statement was material, although insured's health was good. The reinstatement contract was held to have been obtained by fraud and, therefore, was not binding on the insurer. Apparently, the courts of Texas are in the anomalous position of holding that insurability means good health only, if reinstatement is denied; but it has a much broader meaning if reinstatement is granted and avoidance is sought on the grounds that it was procured by fraud.

This court said, in Chambers v. Metropolitan Life Insurance Company, 138 S. W. (2d) 29, l. c. 39:

"The question is raised in the briefs as to what constitutes a material false representation amounting to fraud, as applied to a situation of this kind. Such representation need not necessarily have been concerning a matter which caused the death *but relates to facts necessary to enable the insurance company to form a judgment whether it will accept the risk and at what premium.* 4 Couch Cyc. of Ins. Law, pp. 2607, 2693, 2694, 2695.

" 'Every fact untruly asserted or wrongfully suppressed must be regarded as material if the knowledge or ignorance of it would naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium. So, it is said that whether or not a misstatement is material to the risk, while it is for the jury to determine, depends not upon what it or the applicant may think about the materiality or the importance of the false information given or true information withheld, but upon what those engaged in the life insurance business, acting reasonably and naturally, in accordance with the practice usual among such companies under such circumstances, would have done had they known the truth. It is also declared that *whether a representation is material is determined by the question whether reasonably careful and intelligent men would have regarded the fact stated as substantially increasing the chances of the happening of the event insured against,* so as to cause a rejection of the applica-

tion, or acceptance only on different conditions. 4 Couch Cyc. of Ins. Law, p. 2695.' '' (Italics ours.)

How could any representation, except as to health, be material, if insured were entitled to reinstatement upon production of evidence of good health?

It was said in Kallman v. Equitable Life Assurance Society, *supra,* that many policies issued prior to 1906 provided for reinstatement in event of lapse upon production of evidence of *good health.* Thereafter, the term "insurability" was substituted. Perhaps this may account for some judicial confusion. Furthermore, in many decisions we have examined, the sole question involved was whether or not insured was in good health. (*e.g.* Sussex v. Aetna Life Insurance Company; Smith v. Bankers Life Insurance Company, *supra*). No other element of insurability was in controversy. A loose reading of such opinion might result in the reader concluding that good health is *all* that may be considered in connection with evidence of insurability.

The fact that many states, following the Armstrong investigation, adopted statutes setting forth the language to be used in reinsatement clauses, and prescribed the use of the term "insurability" therein, would indicate that such legislative bodies thought the term different in meaning from the expression "good health." Webster's Unabridged Dictionary (2nd Ed.) defines "insurable" as follows: "Capable of being insured-proper to be insured; affording a sufficient ground for insurance." "Good health" is not named as a synonym, nor is "good health" referred to in any way.

In the original application, signed by insured, he answered questions concerning his occupation and exact duties; whether he intended changing his occupation; whether or not he engaged or expected to engage in aerial flights; to which latter question he answered "No"; whether or not he was or expected to be connected with military or naval service; other life insrance carried; his marital status; by whom employed; his future residence and travel intentions; if any application for insurance had ever been refused or granted with modifications. On the medical questionnaire, attached to the policy, he was interrogated regarding: his past, present and future connection with the handling of intoxicating liquors; where born; what quantities of liquor he consumed daily; present and past use of narcotic drugs; names of members of family, ages, cause of death and a host of other questions, having not the slightest connection with his then condition of health.

Evidence was offered by defendant which tended to prove that insurance companies, generally, take into consideration facts touching the physical, moral, occupational, financial, and residential hazards, and general habits of applicants for insurance on original application and for reinstatement; that such was the usual and customary practice, and was done by defendant in accepting the original appli-

cation and in declining reinstatement in this instance; and that one who flies his own private airplane is considered an exceptionally hazardous risk.

It is proper for an insurance company, when considering an application for reinstatement, to inquire into the same matters that it took into consideration when the policy was originally issued, Equitable Life Assurance Society v. Pettid, *supra*; and if such inquiry develops facts establishing a change in the status of insured having th effect of "substantially increasing the chances of the happening of the event insured against" it may legitimately refuse to reinstate the policy. Chambers v. Metropolitan Life Insurance Company, *supra*. (It will be remembered that this is a case where rejection is based on a change in the status of insured as to a matter about which he was questioned at the time the policy issued, and it is only intended that this opinion shall dispose of the issue presented and none other.) Whether the fact that insured flew in an airplane, owned and piloted by himself, "substantially" increased the chances of death, was a question for the trier of the facts. [Chambers v. Metropolitan Life Insurance Company, 157 S. W. (2d) 593, l. c. 597.] The trial court found that issue in favor of defendant and, under the evidence in this case, he could not properly have done otherwise.

We cannot say that the term insurability is ambiguous and is susceptible of two different interpretations, one of which is "good health." It is not thought that the man on the street would so construe the term. Probably most people know that to be insurable one must have good health; but they also know that good health is not the only factor about which insurance companies are concerned in the issuance of policies. They know that insurability means more than good health.

The judgment should be affirmed. *Boyer, C.*, concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.