**SCHIEL et al. v. NEW YORK LIFE INS. CO.**

No. 12250.

United States Court of Appeals
Ninth Circuit.

Dec. 21, 1949.

Rehearing Denied Jan. 23, 1950.

Crawford & Baker, A. M. Crawford, A. G. Baker, Prescott, Ariz., for appellants.

Evans, Hull, Kitchel & Jenckes, Joseph S. Jenckes, Jr., Phoenix, Ariz., for appellee.

Before HEALY, BONE, and ORR, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal by the beneficiaries of a life insurance policy from a judgment reforming the policy and from a summary judgment in favor of the insurance company terminating the litigation.

The first question to be noticed is whether, as the insurer claims, this court lacks jurisdiction of the appeal insofar as it relates to the decree of reformation. The contention is that the decree was final under Rule 54(b), Federal Rules of Civil Procedure, 28 U.S.C.A., hence was reviewable only by appeal taken within the statutory time after its entry. The facts bearing on the point are these: The insured, a young army pilot named Frank Schiel, Jr., met

his death in December 1942 while on a military mission in a remote part of China, allegedly in a crash of his plane. In 1943 the insurer filed suit in the form of a single cause of action in which it set up the facts on which reformation was sought, alleged that the insured died in an operation intended to be excluded from coverage, and asked a declaration of its obligations. The beneficiaries by answer placed in issue the allegations pertaining to reformation and to the circumstances of the death, and prayed judgment for the full amount of the insurance. On the suggestion of the court that the affirmative matter in the answer should, under the requirements of Rule 10 (b), be pleaded as a counterclaim, the beneficiaries interposed a cross-complaint. Subsequently, on September 12, 1945, the judgment of reformation was entered without express direction that it be final. The proceedings thereafter ensuing had to do with the contention of the beneficiaries that they were entitled in any event to recover on the facts. Summary judgment against them on this issue was entered March 9, 1949, and this appeal followed.

In urging the finality of the judgment of reformation the insurer relies mainly on this court's ruling in Hanney v. Franklin Fire Ins. Co., 9 Cir., 142 F.2d 864, and on Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478. A reading of the Hanney decision shows plainly that it is distinguishable. The complaint in that instance was in two counts the first of which attempted to state a claim on an insurance policy as written. The second sought reformation. The trial court granted the defendant's motion to dismiss the first count

for failure to state a claim upon which relief could be granted. Following the entry of the judgment of dismissal the plaintiffs voluntarily moved for and obtained the dismissal of their second count, with prejudice. They then appealed. In denying a motion to dismiss the appeal as premature this court was careful to point out the foregoing circumstances. Obviously if the plaintiffs were denied the right of appeal they would be deprived of the possibility of review altogether, since no issue below remained undisposed of. In Reeves v. Beardall, supra, the situation was so remote from the present as to afford no analogy.

■ Rule 54(b) has been amended, effective March 19, 1948. The subdivision as it presently exists is shown on the margin.[1] As indicated in the notes of the Advisory Committee, the amendment is in conformity with the historic rule in the federal courts prohibiting piecemeal disposal of litigation. Subdivision (b), as it stood in 1945,[2] does not require or in terms permit of a holding that the judgment in question was final, and we are of opinion that the court has jurisdiction to review it.

The policy was issued to Schiel in August 1935, the insured being then of the age of 18 and a resident of Arizona. The beneficiaries were his parents. The face amount of the insurance was $5,000, premiums of $25.30 to be paid quarterly; and in consideration of an additional quarterly premium of $1.50 double indemnity was payable in the event of accidental death. Among other provisions was one relating to residence, travel and occupation, important to bear in mind as the discussion pro-

1. "(b) Judgment Upon Multiple Claims. When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims." 28 U.S.C.A.

2. The pertinent provision read: "When more than one claim for relief is presented in an action, * * * the court at any stage, upon a determination of the issues material to a particular claim and all counterclaims arising out of the transaction or occurrence which is the subject matter of the claim, may enter a judgment disposing of such claim."

ceeds. It provided that "this policy is free of conditions as to residence, travel, occupation, and military and naval service, except as to provisions and conditions relating to double indemnity and disability benefits." The policy lapsed for nonpayment of the premium due August 10, 1936.

The Company's case for reformation is as follows: Under date of January 24, 1939, Schiel made written application for reinstatement on a company form pursuant to a clause providing for reinstatement within five years after default on presentation "of evidence of insurability satisfactory to the Company" and payment of overdue premiums with interest. In response to a query whether he contemplated participation in aeronautics Schiel answered "yes— as pilot." An additional questionnaire, form No. 5794, relative to aeronautics, was submitted and answered February 2, 1939. The same inquiry was repeated and the insured replied "I am a candidate for Randolph Field as student pilot. Expect to be called in a month." The final question in the form was "To what extent do you contemplate making use of any aircraft and in what capacity?", to which the reply was "Military operation." Subsequent to the return of this questionnaire the Company notified the insured that reinstatement would be made only on condition that the double indemnity provision be eliminated and that there be included in the policy an aviation clause denominated "A"; and under date of March 29, 1939, Schiel complied with the condition by signing a form numbered 2274 requesting a change of the policy "same plan, with waiver of premium, but without double indemnity benefit, and with aviation 'A' clause in loco." The clause itself was not set out in the form, nor, so far as the record discloses, had it been submitted to the applicant for examination.

On an unspecified date a typed letter, directed to the Company, was submitted to the insured and by him signed and returned, stating that "in connection with my application for reinstatement and the offer you made, I request you to endorse the following clause: 'Anything in this Policy to the contrary notwithstanding, the death of the Insured as a result directly or indirectly from operating or riding in any kind of aircraft, whether as a passenger or otherwise, other than as a fare-paying passenger in a licensed passenger aircraft provided by an incorporated passenger carrier and operated by a licensed pilot on a regular passenger route between definitely established airports, is a risk not assumed under this Policy, but upon receipt of due proof of the death of the insured, as a result directly or indirectly from operating or riding in any kind of aircraft, whether as a passenger or otherwise (other than as a fare-paying passenger as defined above) the Company will pay to the beneficiary in lieu of the amounts provided in this Policy, the reserve on the face amount of this Policy at the date of death, and the reserve on any outstanding dividend additions, and any outstanding dividends, including dividend deposits, less any indebtedness to the Company against this Policy.' "

The Company reinstated the policy at a date not specified, but evidently prior to May 1, 1939. Whether this was done before or after the submission for the insured's signature of the undated letter last mentioned the record does not disclose, nor did the court make any finding on the subject. The document was not attached to the reissued policy nor did the court find that its omission was the result of the insurer's oversight.[3]

3. The circumstances of the case lend strong support to the belief that the insured was unfamiliar with the wording of clause "A" at the time the reinstatement was effected. In seeking the reinstatement he would seem to have been moved by considerations having to do with the hazards of the occupation in which he was about to engage and by a desire to safeguard his parents should he perish from those hazards. Inferably, his thought was to restore the measure of protection afforded by the occupation clause of the policy. It is all but inconceivable that he would have paid the heavy money cost of reinstatement had he understood that he was being virtually stripped of that protection in the process.

In effecting the reinstatement Schiel paid the accumulated delinquencies plus interest, together with the current premium in the sum originally fixed. The double indemnity premium alone was eliminated. In the policy as reissued the double indemnity clause, wherever appearing, was marked "void," and there was an endorsement noting its cancellation with corresponding premium reduction. The occupation clause unlimited as to the ordinary life coverage remained in the contract as before. Due to oversight of the insurer's clerical staff the aviation clause "A" was not endorsed on the policy. On May 1, 1939, the Company again had the instrument before it, this time for the addition of contingent beneficiaries. So the matter rested until after the insured's death, when this suit was begun to procure reformation by endorsement of clause "A."

■ One of the defenses raised by the answer, and urged here, is want of consideration for the condition imposed on reinstatement and sought to be given vitality by reformation. This brings up the problem of the scope of the reinstatement clause. Preliminarily, there can be no doubt that the clause vested in the insured a valuable contract right, which survived the lapse, and which the Company could not arbitrarily condition or deny. If the applicant produced evidence of insurability, and if his showing was such as should reasonably have satisfied the Company in light of the attendant circumstances, he became entitled to have the policy reinstated—not as a matter of grace but of right. We have found in the books no dissent from this proposition. The beneficiaries contend that the term "insurability" comprehends nothing beyond good health, in respect of which no question was raised. The insurer argues for a much broader interpretation. While there is a conflict of judicial opinion on the subject, the weight of authority appears to be that the term comprehends something more than good health; and one Arizona decision indicates in general terms that such is the local rule. Equitable Life Assur. Soc. v. Pettid, 40 Ariz. 239, 254, 11 P.2d 833. The cases bearing immediately on the point are collected in a very recent annotation to Kirby v. Prudential Ins. Co., 1947, Mo.App., 191 S.W.2d 379, to be found in 162 A.L.R. 660. The annotation relieves us of the necessity of the extended citation or elaborate review of the decisions.

In the bulk of the decided cases the insurer had simply declined to reinstate. Numerous of these cases involved what are called "moral hazards," such as insolvency of the applicant, overextended insurance, and similar questionable situations, suggestive in many instances of contemplated suicide. It is fair to say that under the weight of authority the existence of serious moral hazards, not present when the insurance was taken out, will normally justify an insurer's refusal to reinstate on grounds of lack of insurability. There are some cases which, like our own, do not involve a disclosure of poor moral risk. Certain of these will be noticed later inasmuch as they deal with factual situations measurably paralleling the present. Before turning to them it is desired to advert to certain matters serving sharply to differentiate this from the mine run of the authorities bearing on the subject.

■ In our opinion the case before us does not, in any true sense, involve the problem with which the generality of the cases deal. The Company made no claim that Schiel had become uninsurable for ordinary life purposes in the amount originally written; in fact it conceded by its conduct that he was insurable for those purposes and in that amount. It declined, however, to reinstate the ordinary life policy except upon a condition importing a concept of insurability at variance with the policy as written. This we think it might not do.

■ An understanding of the view taken may require some further analysis of the terms of the original policy. The clause relating to occupation has been quoted earlier. It provides that the policy is free of conditions as to residence, travel, occupation, and military and naval service, *except as to provisions and conditions relating to double indemnity,* etc. The double indemnity clause, elsewhere found in the policy, excluded from coverage a number of oc-

casions of accidental death, one of which was while operating or riding in any kind of aircraft other than as a paying passenger in aircraft of an incorporated carrier operated by a licensed pilot on a regular passenger route between fixed termini. The exclusion is substantially in the language of aviation clause "A" later sought to be given general application. Since the occupation in which Schiel was about to engage permanently was a calling already excluded from accidental coverage, it was not an arbitrary decision on the Company's part to decline reinstatement of the double indemnity feature. Indeed it had effectively reserved the right to do that through the exception incorporated in the occupation clause. In respect of the ordinary life coverage, however, the insurer had contracted that the policy was free of conditions pertaining to any legitimate occupation, whether in connection with the armed services or otherwise. The condition imposed on reinstatement of the ordinary life coverage for all practical purposes nullified the occupation clause. Under guise of reinstatement the insurer undertook to rewrite the contract in such fashion as to repudiate a risk assumed at the outset. If it could do that it could with equal facility have excluded altogether the risks of military service or travel, whereas the insured's liberty of action in all those matters was a measure of his insurability fixed and determined by the original contract. Without further laboring the point, we add only that the word "reinstate," as used in the policy, is entitled to be given its ordinary meaning, which is to restore to a former state or position.

In but two of the cases examined does a cognate situation appear to have obtained. One of these is Kahn v. Continental Cas. Co., 1945, 391 Ill. 445, 63 N.E.2d 468. In that case, which involved an uncancelable health and accident policy, the insurer, on application for reinstatement after default in payment of a premium, imposed a condition to which the insured declined to accede. The condition was that the latter either greatly reduce in amount the benefits provided by the policy or make like reductions in other similar policies he had subsequently taken out. Otherwise the application would be rejected for lack of insurability. The court was of opinion that the imposition of the condition was an effort on the insurer's part to avoid the plain terms of the original contract. The suit was for specific performance and it was held that the insured was entitled unconditionally to reinstatement.

In Sussex v. Aetna Life Assur. Co., 33 Dominion Law Reports 549, 38 Ontario Law Reports 365, the policy had lapsed for nonpayment of premiums, and was subject to reinstatement on production of evidence of insurability. When the policy was issued the insured was a commercial traveler, but when he sought reinstatement he was a member of the armed forces and subject to service in World War I. There was a provision in it to the effect that "This policy contains no restrictions regarding change of occupation, residence, travel, or service in the militia or army or navy in time of war or in time of peace." The insurer declined reinstatement except upon inclusion of certain conditions regarding military service. The trial court said: "Proof of insurability, in condition 14, means that the insured, at the time of application for reinstatement, is a proper risk for insurance *upon the basis of the original contract.*" [Emphasis supplied.] On appeal judgment for reinstatement was affirmed on the view that the reinstatement clause was susceptible only of the interpretation which the trial court had put upon it.

One more authority will be noticed, namely, Kirby v. Prudential Ins. Co., supra, which was the subject of the annotation referred to above. In that case the court, after an extended review of the authorities, reached the conclusion that the insurer was within its rights in refusing to reinstate a lapsed policy except on condition of the insertion of an aviation clause, the insured having since the policy was issued become the owner and frequent operator of a private plane. The difference we desire to emphasize between that case and this is that in the former the policy appears to have contained no cognate occupation clause. The court reviewed the Sussex case, supra, and differentiated it on

the ground already noted in our discussion of the decision. There is no intimation in the Missouri court's opinion that the Sussex case was thought wrongly decided.

■ The insurer's position is that it had the right to refuse reinstatement altogether, hence it could elect to reinstate upon any condition it wished to impose. It does not argue that it would be entitled to reformation if it had no right to impose the condition. This we understand to be a correct appraisal of the situation so far as concerns the right to equitable relief. Gratuitous promises are not enforced in equity.

The beneficiaries have advanced a further ground for reversal, namely, that the right to reformation is precluded by the two-year incontestability clause contained in the policy, citing this court's holding in Richardson v. Travelers Ins. Co., 9 Cir., 171 F.2d 699. That case was decided on consideration of California law. The insurer contends that whatever may be the California rule the Arizona law is contra to the Richardson decision. The contention is predicated on the course of reasoning pursued by the Arizona court in Posner v. New York Life Ins. Co., 56 Ariz. 202, 106 P.2d 488, in discussing the scope and effect of an incontestability clause. Since we are of opinion that the judgments must be reversed on another ground we regard it as unnecessary to consider the point.

The summary judgment and the judgment of reformation are reversed and the cause is remanded with directions for further proceedings in conformity with this opinion.

BONE, Circuit Judge.

I concur in the result reached by the court but I cannot agree that there was insufficient consideration to support the conditional reinstatement of the policy. Whether or not the court is correct in holding that the Company had no right to refuse reinstatement at the time the insured reapplied, I think that, in consideration of the uncertain state of the law in this regard as disclosed by the discussion in the cases in the majority opinion, the Company's contention that it *had* that right is not so lacking in foundation as to make this assertion unreasonable and wholly incompatible with honesty and good faith. It is my view that the Company's forbearance to assert a claimed right not to reinstate the policy should be held to constitute sufficient consideration to support the new condition which it exacted. See 1 Williston on Contracts (Rev.Ed.) § 130, footnote 6, and § 135; c.f., Restatment of Contracts § 76(b), illustration 4.

However, we held in Richardson v. Travelers Insurance Co., 9 Cir., 171 F.2d 699 that an incontestable clause such as appears in the instant policy, precludes reformation. I dissented from that proposition but the decision represented the considered judgment of this court. Certainty and uniformity in the application of such a rule (in the absence here of a contrary Arizona rule) would seem to call for its application to the facts of the present case.

Indeed, application of the rule to the facts of this case appears to me to have more justification than appeared in the Richardson case. In that case the insurer sought reformation during the lifetime of the insured, and reformation, if granted, would not have defeated recovery by the beneficiaries under the policy. In this case the Company sought reformation after the death of the insured, and the reformation, as granted by the trial court, served to destroy the insurance protection of the policy and defeat recovery by the beneficiaries under the policy except for the amount of the cash surrender value, this being a sum less than one-tenth of the face amount of the policy.

Appellee does not try to distinguish this case from the facts of the Richardson case. It contends that the Richardson case was incorrectly decided, and that, in any event, it should have no application here for the reason that we are here applying the law of Arizona rather than the law of California. In the Richardson case this court found no California cases in point, see 171 F.2d at page 700, and therefore settled the question according to its conception of the proper rule of law. Appellee has cited no

Arizona statutory or case authority (dealing with the incontestability issue) which would indicate that the law of that state requires a different result and I have been unable to find any Arizona decisions in point.

For the reasons above indicated I am of the opinion that the result reached by the court might more properly rest upon the rule announced in the Richardson case.