HARRY D. SCHLOTZHAUER, RESPONDENT, v. CENTRAL MUTUAL INSURANCE ASSOCIATION, APPELLANT.—128 S. W. (2d) 1061.

Kansas City Court of Appeals. May 8, 1939.

*Irwin, Bushman & Buchanan* for appellant.

1134

*Crawford & Harlan* for respondent.

BLAND, J.—This is a suit on a life insurance certificate. There was a verdict and judgment in favor of plaintiff in the sum of $1127.-24, and defendant has appealed.

The facts show that on the 29th day of July, 1931, the defendant, a life insurance company doing business on a mutual assessment plan, with its head offices in Jefferson City, issued to one Daisy M. Schlotzhauer, a certificate of life insurance in which the plaintiff, her husband, was the beneficiary. The beneficiary had two certificates with the defendant upon his own life, one in group one and the other in group two. The certificate issued to Daisy M. Schlotzhauer was in group one.

Daisy M. Schlotzhauer died on November 24, 1935, and the defendant refused to pay her certificate on the ground that she had failed to pay the assessment which it claimed was due on August 1, 1935, and the certificate thereby had lapsed and become void. The facts concerning the non-payment of this assessment are as follows:

Defendant's by-laws which, by the terms of the certificate, became a part of the insurance contract, provided that the members would remain in good standing "by paying *within thirty days from the time assessment was mailed* them all assessments levied against such persons." They provided that, as to certificates in group one, upon the death of a member in good standing, each holder of a certificate would be assessed 12½ cents, and when such death is recorded by the secretary in a book kept for that purpose, the assessment would be considered levied; that such assessment so levied would become due and payable when eight deaths of members in good standing had

occurred. Thereupon, the association would give notice of the levying of such assessments by mailing such notice in the Post Office at Jefferson City, addressed to the last known address of the member, which would be considered notice from the day of the mailing of such notice, and should any member fail, neglect or refuse to pay the assessments so made *within the time specified in the notice* such member would *ipso facto* become suspended, and his certificate void.

Another provision of the by-laws provided: ''When a member has failed for *a period of thirty days* to pay an assessment he shall *ipso facto* become delinquent and his certificate of membership shall become void as hereinbefore provided;'' (Italics ours) that such delinquent member might be reinstated if in good health.

There is no dispute that all of the assessments were paid on the certificate up to the one due for the month of July, 1935. Prior to the 30th day of June, 1935, eight deaths had occurred among the members and notices of an assessment to them were prepared to be mailed on that day. There is a dispute in the evidence as to whether the notice to Daisy M. Schlotzhauer, who lived at Pleasant Green, was mailed on the 1st or the 3rd day of July, 1935. However, a notice was mailed to her dated July 1, 1935, notifying her that a dollar assessment had been levied against her certificate, which must be paid by August 1, 1935, in order for her to remain in good standing and telling her that the assessment might be paid by personal check, which should be mailed to the office of defendant. However, the post office stamp upon the notice was dated Jefferson City, Missouri, July 3, 3 A. M., 1935. This notice was printed on a regular government post card. The notice was received by insured in due course. However, her husband, the beneficiary, attended to the matter of the payment of the assessments on this certificate, as well as his own. About the same time that the notice of the assessment on the certificate in suit was received he also received two separate notices, one on each of his own certificates. These notices were both dated July 1, 1935, but one contained a post office stamp dated Jefferson City, July 1, 10 :00 P. M., 1935, and the other July 2, 8 P. M., 1935. Each of these notices requested the remittance of one dollar and asked that the money be mailed to defendant's office in Jefferson City and that ''this must be paid by August 1st, for you to remain in good standing.''

On August 1, 1935, plaintiff mailed to the defendant at Jefferson City, his check for $3 to cover the assessment on each of the three certificates, and in the letter accompanying the check, he stated: ''I am sorry I failed to get this insurance premium to you in time, just forget it will try and not let it happen again.'' The letter was signed ''Harry & Daisy Schlotzhauer.'' The letter and check did not reach the company until August 2, 1935. It bore a Pleasant Green post office stamp dated August 2, 1935.

On August 7, 1935, defendant wrote a letter addressed to insured

and the plaintiff, stating, in effect, that the assessments were not paid by August 1st, but on August 2nd, which was too late, and that it was holding "your late payment uncashed and as reinstatement pending investigation, and before we can take up the matter of reinstating you and give you a decision it will be necessary for you to fill out, sign and return the enclosed application for reinstatement to this office with one dollar each, also one dollar for group two, for Harry D. Schlotzhauer, which makes a total of three dollars. Upon receipt of the enclosed blanks filled out and signed properly, one for each group, and three dollars, we will take up the matter of reinstating you and do one of two things, either reinstate you and place your policies in good standing to date or return your late payment and reinstatement fee to you. Your insurance with us is not in force at this time and we must receive the enclosed blanks completed and your remittance of three dollars, within the next ten days or we will have to return your late payment and refuse to take up the matter of reinstating you at any time thereafter."

On the 12th day of August, 1935, Daisy M. Schlotzhauer signed a reinstatement blank and returned it to the company, the blank stating: "on account of non-payment of dues, and having thereby forfeited all rights," etc., the insured does "hereby make application for reinstatement," and agreeing that no reinstatement certificate should be effected in the absence of evidence of her insurability, and in case the certificate was not reinstated, she agreed to accept "a return of all sums paid in connection with this application, without interest." Plaintiff, also, signed similar applications on his two certificates.

On August 21, 1935, the company wrote the plaintiff and the insured to present themselves to Dr. Tichner in Boonville, for a medical examination; that "we must receive a report of your examinations within the next ten days, or we will have to return your late payment, or reinstatement fees, to you and refuse to take up the matter of reinstating you at any time thereafter."

Plaintiff and insured were examined by Dr. Tichner, who reported favorably as to the insurability of plaintiff but stated that insured was not in good health and reported unfavorably as to her.

On September 4, 1935, defendant wrote plaintiff and the insured that, not being able to reinstate the certificate upon insured, "therefore, you have a refund of two dollars due you, however, since we are ready and willing to reinstate policies No. 6447 and 1461 on the life of Harry D. Schlotzhauer, we wondered if it would be satisfactory with you for us to give Mr. Schlotzhauer credit for the September assessment on his policy in each group, in exchange for the refund due Mrs. Schlotzhauer whom we cannot reinstate as explained above."

No answer being received to this letter and plaintiff not having further indicated that he desired to have his certificates reinstated, defendant wrote plaintiff and insured on October 1, 1935, as follows:

''We are herewith returning your three checks for three dollars each, making a total of nine dollars. This is a refund in full of your late payment of the July assessment and reinstatement fees;'' and stating that it was unable to reinstate the certificate on the life of Daisy M. Schlotzhauer and that plaintiff had failed to pursue his application for reinstatement, and ''we are also returning your reinstatement fees and cancelling your applications for reinstatement on account of your failure to comply with our request so that we could give you a decision. Kindly return your policies No. 8858, 6647 and 1461 to this office as same are null and void on account of delinquency and are of no value to you. Your beneficiary would not be able to collect on either policy in the event of your death. Regarding the time of your payment of the July assessment beg to advise that the envelope in which we received your notice cards and remittance of three dollars is postmarked, Pleasant Green, Missouri, August 2, 1935, therefore your payment could not have reached this office by, or on August 1st as stated in the notice cards to remain in good standing, if you did not post same until August 2nd, as explained;'' that the ''July assessment was levied on July 1st and you were given until August 1st, in which to pay said assessments and maintain good standing,'' but the assessments had not been received by defendant on August 2, 1935. ''It was solely your fault and neglect to remit for the assessment on time that necessitiated the reinstatement procedure.''

The three checks, which had been given the defendant by plaintiff, for three dollars each were received and retained by plaintiff but the certificates were not sent to the company, they being retained by plaintiff and the insured.

The manner in which the assessments in question were levied, and the cards, containing the notices, mailed, was related by defendant's witness, Miss Artie Foster, who was a member of the board of directors of the defendant and the clerk in charge of its business. She stated that from ten to fifteen thousand notices of assessments were mailed each month to certificate holders; that the mailing list was made up about ten days before the assessment was levied and the cards were mailed on the last of the month unless the first came on Monday and, if the last day of the month came on Sunday, they were posted on Monday because no one was in defendant's office on Sunday and, that in this instance, the first coming on Monday, the notices were mailed on the first; that this was the invariable practise. She testified that the cards were mailed on the first in this instance.

Defendant placed upon the stand the assistant superintendant of mails at Jefferson City, who testified that the first of each month the post office at Jefferson City handles a large and unusual amount of mail, about five times the normal amount, coming from the various insurance companies and the state offices located there; that the post office employees attempted to get this mail out as soon as possible;

that defendant would bring its "cards into the post office between 6 and 9 o'clock at night, and we have a large volume of that mail, and *some months* we don't get it out the same day it comes in; but we try to clear the mail not later than the 2nd or 3rd day of the month;" (Italics ours) that the fact that the three cards in question bore post office stamps of a certain date would not indicate that they were mailed in the post office at the time of day and the hour they were stamped, but that the card in question "possibly" could have been mailed on July 2nd. "Q. Now, if this card was dropped in the post office by itself it would clear through quicker, wouldn't it? A. Yes, sir."

Miss Foster stated that she knew that the cards did not always go out of the post office on the day that they were mailed and that sometimes they would bear a post office stamp of a later date.

The undisputed evidence shows that a letter mailed on August 1st, in Pleasant Green would, in the ordinary course of the mails, reach the hands of the defendant in Jefferson City on the next day, or August 2nd.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given for the reason that the bylaws are ambiguous as to in what time the members were required to pay their assessment after notice thereof had been mailed by it to the members, one provision of the bylaws providing that the members should have thirty days to pay the assessments after the notice was mailed in the post office in Jefferson City, and another provision stating that the assessment should be paid within the time specified in the notice; that the parties placed their own construction upon these provisions of the bylaws, beginning with the letter written by plaintiff and the insured on August 1, 1935, in which they admitted that they were attempting to pay the assessments out of time, followed by the act of the company, in sending the reinstatement blank, the signing of the blank by the insured and going before the doctor for a medical examination, the keeping of the check covering the assessment in controversy, which check was returned by defendant to plaintiff and insured on October 1, 1935, and their silence in reference to the matter until after the death of the insured; that this conduct by the parties to the contract shows that they both construed it to mean that the assessment was required to be paid within the time specified in the notice, that is, by August 1, 1935, and as the check did not reach defendant until August 2nd, the certificate in suit became void and there was never any reinstatement of the certificate.

In support of this contention defendant cites Scotten v. Met. Life Ins. Co., 81 S. W. (2d) 313; Beeman v. K. C. Life Ins. Co., 104 S. W. (2d) 391; Lee v. Mo. State Life Ins. Co., 303 Mo. 492, and like cases.

Defendant concedes that whether the notice of the assessment in question was mailed on July 1st or July 3rd, is a question that is in

dispute in the evidence. It does not contend that if it was not mailed until July 3rd, that the mailing of the check on August 1st, in payment of the assessment, would not constitute payment of the assessment within thirty days after the notice was mailed but, as before stated, contends that by reason of the fact that the contract is ambiguous and the parties, by their conduct, construed it to mean that the assessment should be paid by the time stated in the notice, and the undisputed evidence showing that the assessment was not paid by that time, the certificate in suit became void.

It is well settled that applying for reinstatement after a certificate of insurance has become void, does not, of itself, constitute a waiver of the rights of the insured as a member. [Mut. Life Ass'n v. Hamlin, 139 U. S. 297, 306; Old Colony Life Ins. Co. v. Graves, 200 Ill. App. 71, 73; Zahm v. Royal Frat. Union, 134 Mo. App. 70, 83; Francis and Hunter v. A. O. U. W., 150 Mo. App. 347.] However, there is more in favor of defendant's contention in this case than the mere fact that there was an application for reinstatement.

Defendant's contention assumes that the insured knew of the terms of the bylaws in reference to the time in which she was to pay the assessment in question. The bylaws were not in her possession and there is no evidence that she or her husband knew anything about their provisions. It was stated in Roberts v. American Nat. Assur. Co., 220 S. W. 996, 999: "According to defendant's evidence, insured made default in the payment of the April 3rd installment, whereupon defendant lapsed the policy, and afterwards reinstated it upon insured's paying up and signing an application for reinstatement, together with an affidavit that he was still in good health. From this it is argued that, even if the contract be ambiguous, the parties by their conduct have construed it the way defendant claims it is. To rule that merely because the insured complied with defendant's request and signed the application and affidavit he thereby agreed to a certain construction of *an insurance contract which was in defendant's possession* would seem to be harsh indeed, if in fact, his rights under the contract did not compel him to sign the application or to make the affidavit." (Italics ours.)

However, if it be the rule that the member is presumed to know of the provisions of the bylaws and that a single act, or a course of conduct existing over a very short period of time (as in this case), is sufficient, as a matter of law, to show a construction of an ambiguous contract in a manner against the interest of the person so acting and that the course of conduct and acquiesence in the lapsing of the policy must not be over a period of years, as was in the situation in the cases cited by defendant, yet, in order for the court to say, as a matter of law, that such a construction has been given, the acts upon which it is based, must unequivocally and conclusively establish that there was a mutual understanding or construction of the ambiguous contract.

·In the case at bar, whatever actually may have been the last day upon which the assessment might have been *paid,* that date was not the one upon which the check for the assessment was mailed by plaintiff and insured, but the one which, under the ordinary movement of the mails, a check mailed at Pleasant Green would arrive at defendant's office, defendant having invited the insured to use the mails in making the remittance. [Tippett v. Farmers Mut. Ins. Co., 47 S. W. (2d) 225.]

Assuming that the insured was bound to have had knowledge of the terms of the bylaws, does the letter dated August 1, 1935, written to defendant and signed "Harry & Daisy Schlotzhauer," stating; "I failed to get this insurance premium to you in time," refer to the time stated in the notice, or the time (thirty days) stated in the bylaws. It must be remembered that the notice was dated July 1, 1935. Consequently, if that had been the day it was mailed, the check which could not have arrived in the hands of the defendant in Jefferson City prior to August 2, 1935, would not constitute payment of the assessment in time, even under the thirty day provision. It is apparent that this court cannot say that the letter, dated August 1, 1935, unequivocally and conclusively shows that the parties, writing the letter, had reference to the provision that the assessment should be paid within the time provided for in the notice rather than in the bylaw provision allowing thirty days after the notice was mailed. For the writers of the letter may have taken July 1st, the date of the notice, as the time for its mailing and had in mind the thirty day provision. If this was in their minds, then the letter might have been sent under a mistaken idea of the facts, because there is evidence tending to show that the notice was not mailed until July 3rd, and if this was the date, then the mailing of the check was in ample time under the thirty day provision of the bylaws. There is nothing in the record to show that any of the subsequent acts of Harry and Daisy M. Schlotzhauer were not based upon the mistaken impression that the notice had been mailed on July 1st, the day it was dated, rather than the 3rd, the date, concerning which there is evidence that it was actually mailed, which evidence was contained in the notice, itself, by way of the post office stamp.

The testimony of Miss Foster would indicate that she, as the agent of the company, construed the bylaws to mean that the members should have thirty days after the mailing of the notice of the assessment to pay the same, for the reason, she stated it was the invariable rule of the company to mail these notices not later than the first of the month and that the three notices show, on their face, that a period of thirty days for the payment of the assessments was sought to be given.

The burden was upon the defendant to show that timely payment of the assessment was not made. We cannot say that such a showing

was made, as a matter of law. We think that the instruction in the nature of a demurrer to the evidence was properly overruled.

Defendant complains of the giving by the court of plaintiff's Instruction No. 4, which reads as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff placed his personal check covering the July, 1935, assessment of the said Daisy M. Schlotzhauer in an envelope and properly addressed said envelope, if any, to the defendant association at Jefferson City, Missouri, and placed the proper postage thereon, and deposited said envelope, if any, containing said check, if any, in the United States Post Office at Pleasant Green, Missouri, on the first day of August, 1935, for the said Daisy M. Schlotzhauer, then said assessment was paid on the first day of August, 1935, although the check, if any, did not actually reach the office of the defendant until August 2, 1935, provided you further find and believe from the evidence that the defendant authorized or directed the said Daisy M. Schlotzhauer to use the United States mail in remitting said assessment to the defendant association."

This instruction wholly ignores the testimony that the notice in question was mailed on the first day of July, 1935, and it is apparent, that if such was the fact, then, the mailing of the check, in payment of the assessment, on the first day of August, 1935, was not in time, for the reason, the undisputed evidence shows that, in due course of the mails, the check could not arrive at defendant's office in Jefferson City by that date but would arrive on August 2, 1935, which was more than thirty days after the notice was mailed, if it was, in fact, mailed on July 1st. We held in Tippett v. Farmers Mut. Fire Ins. Co., 47 S. W. (2d) 225, that, where the insurer invites the insured to forward the premium through the mails, the government becomes the agent of the insurer for the purpose of transmitting the premium but, in the absence of any other circumstance, it will be inferred that the insurer intended that the premium should be mailed in time to reach its office in due course, on or before the day the premium is to fall due; that the company having designated the government as its agent, the former cannot forfeit the contract because the remittance was not actually received or not received until after the premium became due. The instruction was clearly erroneous and we find nothing in the other instructions to cure the error.

The judgment is reversed and the cause remanded. All concur.