**Rita R. ENDICOTT, Appellant,**

v.

**ST. REGIS INVESTMENT COMPANY, a Corporation, Respondent.**

No. 54329.

Supreme Court of Missouri, Division No. 2.

July 14, 1969.

Alfred B. Couch, Terrance W. Imes, Kansas City, for plaintiff (appellant).

Paul H. Niewald, Gordon, Adams, Niewald & Risjord, Kansas City, for respondent.

PRITCHARD, Commissioner.

On her claim for damages ($50,000) for personal injuries resulting from a fall from respondent's front porch, alleged to have no guard rails, appellant says that the trial court erred in directing a verdict against her at the close of her evidence.

Respondent claims that appellant made no submissible case of negligence against it, and that · appellant was contributorily negligent as a matter of law, hence the direction of the verdict by the trial court was proper.

Appellant pleaded that respondent is a corporation which for a long period of time operated the St. Regis Apartments at 1400 Linwood Boulevard in Kansas City, Missouri, the building facing south with its front entrance on Linwood Boulevard; that the building is a nine-story structure with approximately 92 apartments and sleeping rooms. Respondent admitted these allegations, but denied all others, and further pleaded appellant's contributory negligence in failing to keep a lookout as to where she was walking; in failing to use her common sense while walking on or about the premises; and in chasing a dollar bill without observing or watching where she was going or what she was doing.

Appellant further pleaded that respondent's front porch, except for upright posts at wide intervals, was entirely open from its floor to the roof over it; that for many years prior to 1964 there was a cement-like railing about 3 feet high around the porch except for the entrance steps. About 1964 respondent tore away the railing and negligently failed to replace it, there being a perpendicular drop-off about 4 feet 3 inches on the west side of the porch. The Building Code ordinance (No. 25020, adopted December 30, 1960) in its Appendix A, Rules and Regulations, was pleaded as being violated by respondent in its particulars requiring balconies or other open spaces serving as passageways to exits to have "balustrades or railings at least equivalent to those specified for Class A. or Class B. fire escapes." Appellant stated in her petition that she had been respondent's tenant for many years, and on November 21, 1966, she entered its premises from the south steps and came upon the porch for the purpose of going to her apartment. While on the porch she took a dollar bill from her

purse to hand to a person. The dollar bill blew out of her hand and fluttered to the west side of the porch near the drop-off. As she reached to pick it up it was again blown to the west, and in reaching for it she lost her balance, "and by reason of the absence of a railing on said balcony or porch at that place, she fell from said drop-off on the west to the ground, seriously and permanently injuring her as hereinafter set out."

Mrs. Roberta Ring testified for plaintiff. In November, 1966, she lived at the St. Regis Hotel, and had done so for about five years. On November 21, Mrs. Ring drove appellant home from work in a borrowed car, and walked with her onto the hotel porch. Appellant tried to pay Mrs. Ring a dollar for taking her to work, but Mrs. Ring would not accept it, but appellant thought she did take it and let go of it. The bill blew to the west edge of the porch and appellant went after it, putting her left foot on it. As appellant reached down to pick up the dollar bill, she became overbalanced and fell over the side. There was then no railing of any kind there, the previous concrete railing having been taken down several months previously. The drop-off was about 4 feet down. Appellant was walking faster than normal when she went after the bill, but was completely stopped when she bent over to pick it up. The wind was blowing enough that it blew the bill, but not completely away. The steps on the front of the porch were as wide as the double-door entrance to the apartments. There was a railing down the middle of the steps. Mrs. Ring was standing at the edge of the doors, about five feet from the edge of the porch where appellant fell.

William Crenshaw, Mrs. Ring's son, testified also that he observed appellant attempting to hand Mrs. Ring the dollar bill, and saw it blow from her hand. He added that the bill came to rest ten inches or a foot from the west edge of the porch. He saw appellant go over to the bill, put her foot on it, and while she was stopped

and bent over to pick it up she "either tripped or fell over the edge." "Well, she just toppled on over." There was no railing of any kind on the porch at that time. Crenshaw thought there had been one there a couple of years before, but "They removed it."

Appellant testified that she moved to the St. Regis Apartments on November 29, 1954, and lived there almost fourteen years. She was Resident Manager of the St. Regis Investment Company from May, 1963 to November 4, 1965. On the day before she was injured she had gone to work at midnight until 8:00 a. m. November 21, 1966, having ridden to and from work with Mrs. Ring. The car was parked in a lot to the east of the hotel building and appellant started to go into the south door. The building had annexes on either end, these being not quite even with the rest of the building. Directly south of the front door were steps. There were no banisters or railings around the porch at the time appellant fell. In 1954, when appellant moved to the building, there were railings constructed of a type of concrete, but they were taken down at the instance of the management in 1964 or 1965. Later there was purchased, delivered and put on the front porch wrought iron, "and he said that he was going to put it up, around the porch, as the railing, protection, but * *. *." The railing was not put up and appellant did not know what became of it.

The front entrance, the porch, along with an occasionally used side entrance, was for the common use of all the tenants. Appellant related the facts of her chasing the dollar bill, placing her right foot on it, and bending over to pick it up, "And when I did I fell."

Photographs received in evidence show that the St. Regis Apartments had seven steps, apparently made of concrete, leading up to the porch. There was an iron railing going up the center of the steps. The porch appears to be hexagonal in shape with five square and round columns on either side of the steps. One photograph

(Exhibit 17) shows the end of the porch from which appellant fell. On the columns on either side of this area, and on the floor adjacent to what appears to be rock edgings, are indentations or marks where the old railing or banister had been. Appellant marked an "X" on this exhibit where her foot was when she fell.

On cross-examination, appellant testified that she had used the front entrance to the St. Regis Apartments for eleven years, and was completely familiar with the porch and steps and the fact that there were no rails of any kind on the porch since 1963 or 1964.

Appellant's first offer into evidence of Ordinance No. 25020, Exhibit No. 14, as pleaded, was rejected by the court. There was incorporated by reference into this ordinance a part of Rules and Regulations of the Building Code, and references to the National Fire Protection Association. Appellant says the ordinance and its references were erroneously excluded by the court. Respondent counters and says that the ordinance and its references as pleaded in appellant's petition were all admitted into evidence. The record shows that the ordinance and references were presented to the court in chambers, and appellant's counsel read the portions that he apparently believed were pertinent to her claim to relief. The court did admit them, as read, into evidence, but the record does not show that they were read to the jury, which, of course, was shortly thereafter directed to find for respondent. The pleaded ordinance does appear sufficiently for a determination to be made whether there is any basis for relief to appellant for her claimed violation by respondent of the provisions of such ordinance. "Section 11–010 Chapter II of the Revised Ordinances of Kansas City shall be known as the 'Building Code.'" Appendix A to Section 11–070 contains "Rules and Regulations" and further references the lists of technical publications of national authorities, among which is the National Fire Protection Association (N.F.P.A.) which in turn contains "Requirements for the design of building exits: N.F.P.A.—N.F.C. Vol. III Building Exits Code, 1959." Of this latter code (on file in the office of the City Clerk) is 101.134 "Exterior Balconies and Roof Walkways. 3171—Any exterior balcony, Porch, Gallery or open flat roof space may serve as a required passageway to reach exits if it complies with all requirements as to width, arrangement and materials of construction that are specified for interior corridors or passageways, and complies with the following paragraphs of this Sub-Section." "3172—Balconies or other open spaces serving as passageways to exits shall have solid floors, substantially level, and shall have balustrades or railings at least equivalent to those specified for Class A. or Class B. fire escapes."

■ It is apparent from the words of the ordinance and regulations that their purpose is to insure that adequate *exits* be kept and maintained within and on buildings so that in the event of fire a safe escape of occupants can be had. Appellant's own evidence here shows that the porch from which she fell is not an exit from the building. The front door to the building is in the center of the porch, and there is provided a banister, directly south from the door, down the front steps. The photographs show this porch to be wide. It would serve no purpose to the protection of persons from fire to have balustrades or railings around the porch where there are no steps. Under the ordinance, by its plain terms, respondent would not be required to install balustrades or railings on the other edges of this first floor porch because it clearly does not serve as a passageway to exits. The ordinance here was not designed to prevent injuries from a mere fall from the front porch of the St. Regis Apartments. In Kuba v. Nagel, Mo. App., 124 S.W.2d 597, 600 [1], it was said: "We readily concede that to make a violation of a statute or ordinance constitute actionable negligence, not only must the injured party be within the class of persons

intended to be protected thereby, but the injury complained of must be of such character as the statute or ordinance was designed to prevent. Anderson v. Wells, 220 Mo.App. 19, 273 S.W. 233; Mansfield v. Wagner Elec. Mfg. Co., 294 Mo. 235, 242 S.W. 400."

■ Appellant further claims that respondent was guilty of common-law negligence in failing to have railings on the front porch of this public or semipublic building in accordance with custom to do so. Appellant offered no evidence of such a custom, but as a matter of common knowledge she asks that this court take judicial notice of such a custom. No case is cited showing that judicial notice may be taken of such a matter. "The application of the doctrine of judicial notice, either as a rule of evidence or as an instrument of judicial reasoning, is subject to well recognized limits. The basic operative condition of judicial notice is the notoriety of the fact to be noticed. It must be part of the common knowledge of every person of ordinary understanding and intelligence; only then does it become proper to assume the existence of that fact without proof. It follows, therefore, that judicial notice must be exercised cautiously, and if there is doubt as to the notoriety of such fact, judicial recognition of it must be declined." English v. Old American Insurance Company, Mo., 426 S.W.2d 33, 40 [11–13]. There is certainly doubt that the owners of buildings such as respondent's commonly have guard rails around front porches. Contrarily, it is well known that there are many different types of construction of such buildings as would preclude common knowledge that they customarily were equipped with guard rails. Consequently, appellant has no proof that her claimed custom existed, either by evidence or by a commonly known fact. She must, then, stand on her evidence that respondent removed the concrete railing some two years before she fell, and failed to replace it as her claimed negligence.

■ There are many cases involving a breach of duty upon the part of a landlord to maintain porch railings where the factual situation shows that the same collapsed or gave way causing the tenant to fall and be injured. Anno. 26 A.L.R.2d 468, "Injury to Tenant–Exterior Defects," § 26, p. 555; Fitzpatrick v. Ford, Mo., 372 S.W.2d 844; Buchanan v. Wolff, Mo. App., 105 S.W.2d 26. But those types of cases are to be distinguished from the present one in that there is an element of reliance upon an apparently sufficient *existing* railing which is in fact defective by reason of the landlord's failure to keep it in a reasonably safe condition. No case is here cited where the facts show an absence of a porch railing around a porch area commonly used by tenants, and protecting a drop-off of four feet three inches, would be a failure on the part of the landlord to maintain his premises in a reasonably safe condition for his tenants. Ordinarily, the measure of the landlord's duty to provide guards or railing would be commensurate with the danger to the tenant in using the unprotected area, and such would also ordinarily be a jury question with respect to the particular facts in the case. In the case of Keith v. Jos. G. Schmersahl Co., Mo., 371 S.W.2d 334, 337 [3–5], it was said, "In determining whether due care has been exercised the presence or absence of a handrail is a factor to be considered along with other physical factors (Anderson v. Younker Brothers, Inc., 249 Iowa 923, 89 N.W.2d 858) but in a 'display home' the mere absence of a handrail on an inside flight of five or six stairs is not sufficient in and of itself to support the inference of negligence." In the Keith case there was no competent evidence that the lack of a handrail on the inside stairway was hazardous. In Lewis v. Gershon, Mo.App., 335 S.W.2d 522, it was held that there was no duty to maintain handrails on an outside stairway.

■ This case does not fall within Wilson v. Jones, Mo.App., 182 S.W. 756, 758, where the plaintiff deliveryman going

along a narrow path along an unlighted and unguarded stairway stepped off and fell into the stairway. It was there held that there existed a "veritable trap or pitfall" of unusual character so as to expose plaintiff to an unusual hazard. In the case of Ullrich v. Kintzele, Mo.App., 297 S.W. 2d 602, it was held that the landlords were under no common-law duty to erect and maintain a railing above a retaining wall from which plaintiff fell, the adjacent area being commonly used by tenants to dispose of garbage into cans. The court there, 297 S.W.2d 606 [7], under the facts, refused to apply the "inherently dangerous" doctrine, said to be, quoting Street v. W. E. Callahan Const. Co., Mo.App., 147 S.W. 2d 153, 155, "as that danger which ' "inheres in the instrumentality or condition itself, at all times, so as to require special precautions to be taken with regard to it to prevent injury; * * *." ' " Appellant has adduced no evidence here that the absence of a railing around the porch was so glaringly or inherently dangerous, or was of unusual character so as to be a trap or pitfall, as would charge respondent with a common-law duty to take precautions to prevent her injury. Here, the front porch of respondent's building was wide. The walkway to the front door, normally used by tenants, went up the center. The photographs show the area from which plaintiff fell to be level and free from obstructions. Under the facts and the foregoing cases, the absence of a railing, in itself, would not justify an inference of negligence.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court, MORGAN and FINCH, JJ., and PALUMBO, Special Judge, concur.

DONNELLY, P. J., not sitting.