Peter HAMMOND, Jovanka Hammond and Estelle Jakovac, Plaintiffs-Appellants,

v.

MISSOURI PROPERTY INSURANCE PLACEMENT FACILITY, Defendant-Respondent.

No. 51946.

Missouri Court of Appeals, Eastern District, Division Five.

April 21, 1987.

Motion for Rehearing and/or Transfer Denied May 20, 1987.

Application to Transfer Denied July 14, 1987.

Frank J. Niesen, Jr., Muegler & Niesen, St. Louis, for plaintiffs-appellants.

Thomas J. Plunkert, Leritz, Reinert & Duree, P.C., St. Louis, for defendant-respondent.

SIMEONE, Senior Judge.

This is an appeal by plaintiffs-appellants, alleged insureds under a policy of fire and extended coverage insurance, from a judgment of the circuit court of the City of St. Louis entered on June 6, 1986 holding that there was no policy of insurance in effect on November 27, 1982 when the premises owned by appellants were partially destroyed by fire. The trial court concluded that "defendant has no liability to plaintiff for his fire." For reasons hereinafter stated, we affirm.

## I

Plaintiffs, Peter Hammond, his wife Jovanka Hammond and his mother-in-law Estelle Jakovac own certain real property located at 2137–39 California Avenue in the City of St. Louis as joint tenants. They purchased it in 1980. The defendant-insurance company first issued a one-year fire and extended coverage policy effective August 22, 1980 for one year. Notice for the renewal of 1981–1982 policy was made in July, but since no premium was received by August 25, 1981, the defendant closed the file. On September 18, 1981, the premium was received and a policy issued for coverage from September 19, 1981 to September 19, 1982. This policy, a fire and extended coverage insurance policy No. HO 745556, was issued pursuant to the Missouri Basic Property Insurance Inspection and Placement Program, section 379.810 R.S.Mo. 1986 (The Fair Plan) and was in effect from September 19, 1981 through September 19, 1982. On September 1, 1982, the company, by written memorandum or "invoice" informed Peter Hammond that the policy was to expire on September 19, 1982 and further informed him as to a renewal of the policy:

> RENEWAL[:] IN ORDER TO RENEW YOUR POLICY WITH NO LAPSE IN COVERAGE, PAYMENT MUST BE RECEIVED BEFORE THE EXPIRATION DATE INDICATED ABOVE. IF PAYMENT IS RECEIVED AFTER THIS DATE, COVERAGE WILL BE EFFECTIVE THE DAY AFTER WE RECEIVE THE PAYMENT.

The amount of insurance was $21,000 for the building—a four family flat. The total premium of the policy for fire, extended coverage and vandalism was stated in the notice to be $261.00. Premium was to be made by check or money order and payable to the "Missouri Fair Plan" for the amount due. The notice also indicated that the amount shown was to be "mailed to Missouri Fair Plan" at its office in St. Louis.

Nothing was done by the plaintiffs prior to September 19, 1982. Hence, the file was "closed" because the premium was not paid as of September 21, 1982.

John J. Dower, at the time, was the plaintiffs' insurance broker. He had no agency contract with the defendant. On October 29, 1982, Dower wrote to Peter Hammond informing him that the fire insurance "on your property" expired September 19, 1982; that since the renewal premium was "never paid" the "building is now without insurance." Dower's letter informed Hammond that if "you wish to rewrite the coverage please send cashier's check" so that "I can submit a new application." On November 13, 1982, Peter Hammond through his broker, Dower, made a renewal application for insurance. The application was also signed by Hammond's broker, Dower. On November 6, 1982, a few days before making application for renewal of the policy on November 13, 1982, Hammond wrote a check for $261.00, the amount of the requested premium stated in the September 1, 1982 notice payable to "Missouri Property Insurance Placement Facility." On November 10, 1982, Dower deposited this check in his own account. On November 15, 1982, Dower obtained a "Treasurer's Check" in the amount of $261.00 payable to Missouri Property Insurance Placement Facility and mailed the same to the defendant on that date. The renewal form dated September 1, 1982, indicating that the insurance expired on September 19, 1982 and the $261.00 check were received by the defendant on November 16, 1982—three days after they were mailed.

On November 18, 1982, the defendant sent a notice to Dower quoting a new premium of $293.00 for the renewal of the insurance. A rate change had occurred on October 20, 1982.

On November 22, 1982, Dower wrote to Peter Hammond enclosing a letter dated November 19, 1982 from the insurance company. That letter indicated the amount of the new premium, $293.00. Dower's letter informed Hammond that the new premium was $293.00, that his cashier's check for $261.00 was enclosed and that partial payments were not acceptable to the company. The letter then informed Hammond that "you will have to get an additional Cashier's check in the amount of

$32.00 and forward it to them before they will insure the property on California. Please give this matter your immediate attention."

On Wednesday, November 24, 1982, Hammond purchased a money order at a 7–11 store in the amount of $32.00 payable to the defendant and together with the $261 cashier's check mailed the same, postage prepaid, at 1720 Market Street around 7:00 or 8:00 p.m. November 25, Thursday, was Thanksgiving Day, a legal holiday. On Friday, November 26, 1982, there was ordinary mail delivery but the defendant's office was closed. On Saturday, November 27, 1982 at about 4:00 a.m., a fire occurred at the premises on California Avenue and considerable damage—ranging between $14,000 and $29,000—was done. On Monday, November 29, the defendant, in the regular course of business posted the check in the amount of the premium and issued a new fire and extended coverage policy on the next day for the period November 30, 1982 through November 30, 1983.

On December 5, 1982 a "Property Loss Notice" was filed by John J. Dower, Insurance Agency, reporting that a fire had occurred on November 27, 1982 in the basement of plaintiffs' premises; that the amount of the loss was approximately $10,000; and that the loss had been reported by Peter Hammond. The notice contained the following in the box marked "renewals": "I realize this occurred before effective date but his attorney says it should be reported." On December 8, 1982, defendant wrote to Mr. Hammond informing him that "as you are aware," your policy expired on September 19, 1982 and the policy "did not come into effect until November 30, 1982. As the loss occurred on November 27, some three (3) days prior to the inception of your policy, there is no coverage."

These proceedings followed. Plaintiffs filed their original petition on June 15, 1983. On June 4, 1986, by leave, plaintiffs filed their second amended petition upon which this cause was tried. The petition recited the above events and alleged that the policy of insurance was effective November 16, 1982 when the premium of $261 was received at defendant's office, or in the alternative the policy was in full force in effect on November 24, the day the premium was "placed in the hands of Defendant's agent, the postal service" because "judicial notice of delivery" on November 26 (Friday) "requires that the policy was in effect on November 27 at 12:01 a.m. prior to the fire." The petition prayed for a declaration as to whether the insurance policy was in force on the date of loss because of the "unequivocable [sic] offer of the Defendant insurer and the Plaintiffs [sic] subsequent acceptance which was in strict accord with the offer or alternatively in effect by tender of the $293.00 premium by mail ... on November 24, 1982." Plaintiffs prayed for a judgment of $21,000, for vexatious refusal to pay, attorneys' fees, interest and costs.

Trial before the court was held on June 4, 1986. The parties stipulated to many facts including that no record was kept "by way of the envelope in which the particular premium on the policy ... was received, so that there would be no indication from that as to what postmark would be on it."

At trial, Mr. Hammond testified concerning the facts. On cross-examination, he admitted that in November, he would not get coverage until "after the $32 check and the $261 check were received by the Fair Plan."

During the hearing, the general manager of the Missouri Fair Plan also testified. He stated that it is the "normal practice and custom" to stamp the mail the first business day" when it is received. The "log" in this case indicated that the $261 check and the $32 money order was received on November 29, 1982. The policy of the Plan is to make a policy "effective at 12:01 a.m. the date following receipt of the premium in the Fair Plan office." The office had no mail slot for delivery of mail on the Friday after Thanksgiving when the office was closed.

Evidence was introduced indicating that an application for property insurance dated July 20, 1981 was received by the defendant on July 21, 1981; that an application

dated August 24, 1982 was received on August 25, 1982 and that the application for insurance dated July 19, 1980 was stamped received on July 23, 1980. Plaintiffs requested that the court take judicial notice of the receipt of the total $293.00 premium on Friday, November 26, 1982, but the court refused to do so.

On June 6, 1986, the trial court made its findings of fact and conclusion of law. The trial court found the facts as related above and concluded that:

1. plaintiff had a policy of insurance which expired September 19, 1982;
2. defendant tendered a quotation to plaintiff on September 1, 1982 for $261.00;
3. the offer was not accepted within a reasonable time;
4. Dower was an agent of plaintiffs;
5. on November 13, 1983, plaintiffs filed an application for insurance with defendant;
6. in the normal course of business defendant accepted the application and computed the premium at $293.00;
7. the $293.00 was received on November 29, 1982, the first business day after plaintiffs placed premium in the mail;
8. there was no policy of insurance at the time of the fire; and
9. defendant has no liability for the fire.

## II

For reversal, appellants first contend that the trial court erred in refusing to conclude that a binding contract of insurance was effective on November 17, 1982, the day following the receipt of the $261 premium for the reason that the appellants accepted the "offer" of September 1, 1982 for the renewal of the insurance within a reasonable time but the court concluded that the "offer" was not accepted within such reasonable time. Appellants argue that there was no evidence to "suggest what a reasonable time for accepting [the company's] offer to provide insurance is, and, without such evidence, [defendant] insurer is bound to the coverage offered." Secondly, appellants contend in the alterna-

tive that the court erred in failing to take judicial notice that the total premium mailed on November 24, was delivered and received on the next business day, Friday, November 26 (although the defendant's office was closed) for the reason that the mailing of the premium was in the form of transmittal requested and required by the defendant on its invoice of September 1.

## III

■ There are certain general principles relating to the resolution of this proceeding. This is a court-tried case, so the scope of our review is established by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment must be sustained unless there is no substantial evidence to support it, or unless it is against the weight of the evidence, or unless it erroneously declares the law or erroneously applies the law. *Grassham v. Farm Bureau Town & Country Ins.*, 684 S.W.2d 892, 895 (Mo. App.1984).

■ These proceedings involve renewal of a fire and extended insurance policy. *See generally*, 43 Am.Jur.2d, *Insurance* § 443 (1982). The "renewal" of an insurance policy is a separate and distinct contract for the period of time covered by the renewal unless it is apparent that the parties merely intended the renewal to constitute a continuation of the old policy. *De-Witt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 705 (Mo. banc 1984). While an insurer may waive prompt payment of a renewal premium, *MFA Mutual Ins. Co. v. Quinn*, 259 S.W.2d 854 859 (Mo.App.1953), the reinstatement of a lapsed policy constitutes a new contract. *Kirby v. Prudential Ins. Co. of America*, 239 Mo.App. 476, 482, 191 S.W.2d 379, 381 (1945); *Stone v. M.F.A. Mut. Ins. Co.*, 663 S.W.2d 774, 775 (Mo.App.1983). There can be no question that the policy in the case at bar lapsed on September 19, 1982 when no premium was received prior to the expiration of the policy. The appellants however, contend that the September 1 invoice or notice informing the appellants that the policy may be renewed constituted an "of-

fer" which was accepted within a reasonable time. *See* E. Farnsworth, *Contracts,* § 3.10 (1982). Such invoice can be considered an "offer" to the appellants to renew the policy. But the insured must follow the specific provisions of the policy concerning renewal. *Cf. Sereno v. Lumbermens Mut. Cas. Co.,* 132 Ariz. 546, 647 P.2d 1144 (1982); 43 Am.Jur.2d, *Insurance,* § 443–444. When an offer is made and no time limit is specified as to the time to accept the offer and the duration of the power of acceptance is not stated, then it is deemed that the offer is open for a reasonable period of time. Restatement (Second) of Contracts, § 41 (1981). The resolution of what is a reasonable time is a question of fact to be determined by the trier of fact. *See* J. Calamari, *Contracts,* § 2–23 (2d ed. 1977); *Becker v. State of Mo., Dept. of Social Services,* 689 F.2d 763, 767 (8th Cir.1982); *Coffman Industries, Inc. v. Gorman-Taber Co.,* 521 S.W.2d 763, 771 (Mo.App.1975); after a reasonable period of time the offer lapses; *Coffman, supra;* A. Corbin, *Contracts,* § 36 (1961). The trial court concluded that the appellants did not act upon the "offer" of September 1, within a reasonable time so that it lapsed and we cannot conclude that, under the facts, the court erred in this regard. The appellants did nothing to renew the insurance premium until at least November 15, 1982 when Hammond sent the $261.00 premium to Dower. Inaction for almost two months cannot be considered to be reasonable. The authorities relied upon by the appellants do not resolve the specific issue presented here or are inapposite.

The trial court did not abuse its sound discretion in concluding that "the offer was not accepted within a reasonable time."

### IV

The second issue is more difficult to resolve. The thrust of appellants' argument is that (1) since the insurance company in its September 1 invoice requested and required that the renewal premium "must" be in the form of a check or money order "mailed" to the Missouri Fair Plan that the rule regarding the payment of premiums is governed by *Tippett v. Farmers' Mut. Fire*

*Ins. Co.,* 47 S.W.2d 225 (Mo.App.1931), and *Schlotzhauer v. Central Mut. Ins. Ass'n,* 233 Mo.App. 1132, 128 S.W.2d 1061 (1939); (2) the trial court should have judicially noticed that the mailing of the total premium by Hammond was "received" on the next business day—Friday, November 26, so that it should be presumed that the premium was received on that day—one day before the fire—hence effecting insurance coverage. A subsidiary issue is that the insurance police was effective on Wednesday, November 24 when Hammond placed the total premium in the mail under the so-called "mail-box" rule.

One long-standing and established principle embodied in the law of insurance is that the mere depositing of a premium in the mail is not sufficient to effect the renewal of coverage of insurance. There must be evidence that the premium will, in due course of the mails, reach or be received by the office of the insurance company even though the premium is actually received after the premium falls due. That is the holding in *Tippett* and other authorities. There was no such evidence or proof here. In the absence of such evidence, can anyone be assured that the premium would, in the due course of the mails have reached and be received at the defendant's office on Friday, even if the office had been open?

In *Tippett, supra,* an action was brought upon a fire insurance policy. The defendant issued its policy of insurance insuring certain items of farm property, the premiums to be paid annually. On February 3, 1930, a fire occurred destroying certain property but the defendant refused payment because the premium had not been paid at the time of the loss. The assessment (premium) became due December 1, 1929. On that date the defendant mailed notice to the plaintiff. The notice stated that the premium must be paid by February 1, 1930. Plaintiff mailed the assessment on February 3 by depositing it in the post office, before the fire occurred. The letter containing the check did not reach defendant's office until the morning of

February 5. The Court of Appeals affirmed the trial court's denial of recovery. The court held that the plaintiff had the burden to show that the company manifested an intention to accept the premium as of the time mailed. "This burden was not sustained." 47 S.W.2d at 227. In the course of the opinion the court stated the general principle that where an insurance company invites a policy-holder to transmit premiums by mail, it will be inferred that the insurer intends to accept as payment the funds mailed in time to reach and be received at its office in the due course of the mails on or before the day the premium falls due, since the effect of the invitation is that such mailing constitutes payment as of the time of mailing.

This decision, it is to be noted, affirmed the trial court's denial of coverage. *Tippett* stands for the proposition that if a policy holder is invited to transmit the premium by mail and does mail the premium "in time to reach" the insurer on or before the day the premium falls due, then the mailing constitutes payment of the premium. *Tippett* does not hold that the mere deposit in the mail of the premium makes the policy of insurance effective. The mailing must be made at a time when in the due course of the mails the premium will reach the insurer's office. *Tippett* held that the mere deposit of the premium in the mail did not constitute payment. The plaintiff in *Tippett* did not sustain his burden and the judgment was affirmed.

In *Schlotzhauer, supra,* the court reversed a judgment for the plaintiff who brought suit upon a life insurance policy. The court recognized the established principles stated in *Tippett.* The court held the date on which the premium would be paid was the date on which the check mailed would arrive at the defendant's office in the due course of the mails. 128 S.W.2d at 1065.

Neither *Tippett* nor *Schlotzhauer* aid plaintiffs.

 The specific issues, crucial to the plaintiffs' case on this point, are whether (1) there is evidence, upon which the plaintiff has the burden of proof, that the premium was or could have been received by the insurer, in the ordinary course of the mails on Friday, November 26, or (2) whether judicial notice can be taken that the premium mailed on Wednesday, November 24, would have been actually received by the defendant at its office had it been open on Friday, so as to effect insurance as of 12:01 a.m. on Saturday, November 27.

Appellants argue that the "rules concerning a presumption of delivery in the mail are ones which have existed for many years in this state and are rules for the taking of judicial notice of delivery." Appellants urge that the trial court should have taken judicial notice of the receipt of the premium on Friday, November 26, by defendant. Appellants rely on *Rolla State Bank v. Pezoldt,* 95 Mo.App. 404, 69 S.W. 51 (1902); *German-American Bank v. Cramery,* 184 Mo.App. 481, 171 S.W. 31 (Mo.App.1914) and *Hood v. M.F.A. Mutual Insurance Company,* 379 S.W.2d 806 (Mo. App.1964).

*Rolla State Bank, supra,* involved an action against an indorser of a note, in which it was held that the trial court "had the right to take judicial notice of the customary operations of the federal mail service, so far as to infer that defendant received the notice ... the next day following that on which the notary mailed it to him in the same city." 69 S.W. at 53. In *German-American Bank v. Cramary, supra,* the trial court held that the court could take judicial notice that a letter mailed in Macon City on the fifth of the month should be delivered to the addressee in a nearby city on the sixth or seventh. This was in connection with the filing of a writ of error and the giving of notice to the opposing attorney. Neither case dealt with an insurance contract. *Cf., McCaskey Register Co. v. Redd,* 145 Mo.App. 185, 187, 130 S.W. 109, 110 (1910) which includes the statement that when a letter is mailed between two cities it could not be assumed that it would be received the next day.

In *Hood, supra,* a case similar to the case at bar, plaintiff brought an action on an automobile collision policy. The Southern District held that the plaintiff did not

make a submissible case as to whether there had been timely payment of a renewal premium which plaintiff had mailed to the insurer's agent. The insured mailed the premium two days before the policy expired. In the course of the opinion, reversing a judgment for the insured, the court stated that the triers of facts "reasonably could not have inferred and found, *and certainly we cannot know judicially,* that the envelope (containing the money order) would, in due course of the mails have been transmitted in time to have been delivered ... on the following day ..." 379 S.W.2d at 811. (Emphasis added.) *See also* 29 Am.Jur.2d, *Evidence* § 194 (1967). In *Hoelscher v. Sel-Mor Garment Company,* 430 S.W.2d 745 (Mo.App.1968), this court discussed the issue of judicial notice of the delivery of the mails. The court refused to notice judicially the relations between the detailed routing practices of the post office, intra-city and inter-city, or the methods of transport. *Cf.* Section 287.-480, R.S.Mo. 1986 for workers' compensation cases. Hence, except for the early case of *Rolla State Bank,* the courts of this state do not take judicial notice of the fact that a letter placed in the mails will be received the next day.

The application of the doctrine of judicial notice is subject to well recognized limits. If there is any doubt, judicial recognition of a fact is to be declined. *Endicott v. St. Regis, Ins. Co.,* 443 S.W.2d 122, 126 (Mo. 1969). The basic operative condition of judicial notice is the notoriety of the fact to be noticed. It must be part of the common knowledge of every person of ordinary understanding and intelligence; only then does it become proper to assume the existence of a fact without proof. *English v. Old American Insurance Company,* 426 S.W.2d 33, 41 (Mo.1968), relied upon in *Hoelscher, supra,* 430 S.W.2d at 748; C. McCormick, *Evidence,* § 329 (3rd ed. 1984). Under these principles and judicial decisions, we cannot conclude that the trial court erred in refusing to take judicial notice that delivery of the premium mailed by Hammond on November 24th would have been received on Friday, November 26.

The offer in the renewal notice had lapsed and was so found by the trial court. When the total premium was placed in the mail on Wednesday before Thanksgiving, in the absence of proof that the premium deposited would in the due course of the mails as required by *Tippett,* there was no assurance that it would have been received by the defendant on Friday, even if the office were open. The trial court can judicially know that there was no mail on Thanksgiving Day, *See Deffendoll v. Stupp Brothers,* 415 S.W.2d 36, 42 (Mo. App.1967), but the doctrine of judicial notice does not extend to the fact that a letter placed in the mails will actually be received on the next working or business day.

It may have been appropriate in the early decades of this century to judicially know a letter placed in the mail would be delivered by the postal service, at least in the same city, so as to be received by the addressee on the next day. But this court, in *Hoelscher* held otherwise, and today, with all our modern means of transportation, computer technology, zip codes of multi-numbered digits, electronics, detailed routing practices, and pick-ups, the average person of ordinary understanding and intelligence realizes from experience and media accounts that the postal service is not perfect. Rather than judicially knowing that the mail will be picked-up, processed, delivered and received the next business day after being mailed, today it may seem easier to know judicially just the opposite.

To judicially know that a letter mailed on Wednesday would be delivered and received on a day following a national holiday would, in these days, be contrary to common knowledge experienced by persons of ordinary understanding and intelligence— the basic principle of judicial notice. Whatever the situation was in the early part of this century at the time *Rolla Bank* and *Cramery* were decided, the situation and circumstances, for whatever administrative of budgetary reasons, have changed.

We hold the trial court did not err in failing to take judicial notice of the delivery and receipt of the appellants' premium the

next mail day after the premium was mailed.

## V

We further conclude that in depositing the letter containing the total premium in the mail box on Wednesday, November 24, 1982, no acceptance of the "renewal offer" took place so as to effect coverage. While the general principle is that where acceptance by mail is authorized, a contract is completed at the moment the offeree deposits a letter of acceptance in the mailbox, the principle is not applicable under the circumstances here where the offer has lapsed. *See generally* as to acceptance by mail when mail is authorized: 17 Am.Jur.2d, *Contracts,* § 48 (1964); A. Corbin, *Contracts,* § 78 (1952); 1 S. Williston, *Contracts,* Third Ed. § 83 (1957); Restatement (Second) of Contracts, § 63 (1981); 1 Mo. Bar CLE, *Civil Actions,* § 7.21 (1980); *Adams v. Lindsell,* 106 Eng Rep. 250 (K.B.1818).

The other applications for renewal for the years 1981 and 1982 and the date they were received by the defendant are inconclusive. Some show they were received by the defendant the next day. At least one shows otherwise. Hammond knew that after September 19, 1982 the insurance had expired, and Dower knew there was no coverage as shown by his letter of November 22. The renewal notice or invoice expressly stated that if the premium is not renewed on or before the expiration date, it would be renewed one day after the premium was "received." It was not so received.

## VI

This case is one of unfortunate circumstances. However sympathetic we are to the plight of the plaintiffs, we are not at liberty to make a contract for the parties, where there is none or when the contract in plain language triggers the effective time of renewal. The contract of insurance entered into between the parties expressly provided that renewal coverage would not be effective until the premium was received. The contract of insurance here specifically excluded the operation of a rule that the mere transmission of the premium by mail may constitute payment as of the time of the mailing. See G.J. Couch, Insurance § 31.109 (2d ed. 1985). Any other holding would have broad implications for both the insured and the insurer.

We have reviewed the entire record and the judicial authorities relied upon by the appellants. We find no error under the principles of *Murphy v. Carron, supra,* and affirm the judgment of the trial court.

The judgment is affirmed.

CARL R. GAERTNER, P.J., concurs.

SMITH, J., dissents in separate opinion.

SMITH, Judge, dissenting.

I respectfully dissent.

It can be acknowledged that our postal service is not perfect and further that plaintiff was less than thorough in failing to provide some evidence of the operation of the postal service. But evidence here establishes one day postal service on several occasions. While I cannot speak to the knowledge and experience of people generally, my experience is that first class mail mailed in the City of St. Louis is delivered regularly to my office in the City the next day. This letter was mailed at the Main Post Office in St. Louis for delivery at the Pierce Building, approximately 14 blocks away. It could not, of course, be delivered on Friday because defendant chose to close its office on that business day. Defendant selected the agency by which the premium was to be transmitted. Plaintiffs utilized that agency. Defendant conditioned insurance coverage upon "receipt" of the premium. That receipt triggers the effective date of the coverage. "Receipt" in this context implies that defendant will be present during normal business hours to receive premiums delivered by its agent. There was evidence that delivery by mail had been effected in the past by next day delivery. It is not unreasonable to believe that mail deposited in the main post office on one business day will be delivered 14

blocks away on the next business day. Plaintiffs' evidence was sufficient to carry its burden that receipt would have been effectuated on Friday had there been someone present to receive. At this point the burden should shift to defendant to prove the contrary. Defendant did not come forward with such evidence.

I would reverse.